J-A28040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.B., MOTHER | : | |
| | : | |
| | : | No. 286 MDA 2021 |

Appeal from the Decree Entered December 31, 2020
In the Court of Common Pleas of Tioga County Orphans' Court at No(s):
68 OC 2020

| | | |
|---|---|---|
| IN RE: D.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.B., MOTHER | : | |
| | : | |
| | : | No. 287 MDA 2021 |

Appeal from the Decree Entered December 31, 2020
In the Court of Common Pleas of Tioga County Orphans' Court at No(s):
69 OC 2020

| | | |
|---|---|---|
| IN RE: E.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.B., MOTHER | : | |
| | : | |
| | : | No. 288 MDA 2021 |

Appeal from the Decree Entered December 31, 2020
In the Court of Common Pleas of Tioga County Orphans' Court at No(s):
70 OC 2020

J-A28040-21

BEFORE: LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED DECEMBER 06, 2021**

Appellant C.B. appeals from the Decrees entered in the Court of Common Pleas of Tioga County Orphans' Court Division on December 31, 2020, terminating her parental rights to her three, minor children, M.S., D.I, and E.I.[1,2]  Counsel also has filed a petition to withdraw on appeal and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **In re: V.E.**, 611 A.2d 1267 (Pa.Super. 1992).   After careful review, we grant counsel's petition to withdraw and affirm.

In her **Anders** Brief, counsel detailed the factual and procedural history herein as follows:

> On September 24, 2019, Tioga County Children and Youth Services (hereinafter "the Agency") received a report that D.I. had been treated at the Troy, PA emergency department, for suspected sexual abuse, and that D.I. was subsequently seen at the Robert Packer Pediatric Office for evaluation of said suspected sexual abuse (Appls. for Emerg. Prot. Custody, September 24, 2019, p. 1). On that same date, the trial court granted the request of the Agency, and removed D.I., as well as her two siblings, from Appellant's home, and placed them all into foster care (Orders for Emerg. Prot. Custody, September 24, 2019). Due to the alleged sexual nature of the abuse of D.I., and the fact that the children

_____

[*] Former Justice specially assigned to the Superior Court.

[1] In a *Per Curiam* Order entered on May 4, 2021, upon noting that a review of these matters revealed the appeals involve the same Appellant and similar issues, this Court consolidated the appeals filed at  286 MDA 2021, 287 MDA 2021, and 288 MDA 2021 *sua sponte*.   **See** Pa. R.A.P. 513; Pa. R.A.P. 2138.

[2] The female children, M.S. and D.I., were born in January of 2016 and September of 2017, respectively.  E.I., Appellant's son, was born in February of 2019.

- 2 -

had been exposed to multiple caregivers and family members during the relevant time frame, no safety plan to allow the children to remain in the home was considered, nor was any relative's home considered as a placement option.

On October 1, 2019, a Shelter Care hearing was conducted and all three children were kept in foster care (Shelter Care Orders, October 2, 2019).

On November 26, 2019, an adjudicatory hearing was held and all three children were deemed dependent and kept in foster care (Orders of Adj. and Dispo., December 18, 2019). The [c]ourt found that in addition to the serious physical injury sustained by D.I., the physical standards of Appellant's home were poor, due to a lack of cleanliness. Id. At 2. The [c]ourt found that D.I. had undergone a forensic exam at the Sunbury Child Advocacy Center on September 25, 2019. Id. The [c]ourt also found that Appellant was indicated for child abuse in January 2019, for failing to obtain medical care for M.S. Id. The [c]ourt found "It is uncontested that D.I. suffered a significant injury physically in that she was a victim of an inappropriate sexual act," and "It may be that M.S. has also suffered abuse of a certain nature," and that "D.I. was not exhibiting signs of this injury or trauma prior to .. being returned to Appellant's home," and "Mother lacks the protective capacity to support and protect these children," and " .. the children cannot be safely returned to Mother's home." Id at 3, 4.

On February 12, 2020, the Agency filed petitions for permanency review, in which was alleged that Appellant had "signed refusals for drug tests," and that there remained overall concerns regarding Appellant's form of discipline, her inability to handle all three children together, and her personal hygiene (Pets. for Perm. Rvw., February 12, 2020, p. 1). Appellant obtained a psychological assessment, but refused to consent to allow the Agency to access the results. Id. at 2. On February 7, 2020, Appellant admitted herself to a hospital, due to suicidal ideations. Id. Appellant lacks protective capacity, as evidenced by her utilization of visitation time with M.S. to question M.S. about Appellant's husband, and whether he had hurt M.S. Id. Appellant's husband is listed as a perpetrator of abuse against M.S. Id at 6.

On March 30, 2020, pursuant to a permanency review hearing, the [c]ourt issued Orders which indicated that Appellant had made moderate progress in compliance with the permanency plan, that she continued to work on discipline, household management, and addiction issues, and that there are still concerns regarding her ability to handle all three children

together, as well as Appellant's hygiene (Perm. Rvw. Orders, March 3, 2020, p. 1). The [c]ourt again specified that the children do well at their placement home. Id. at 2. The [c]ourt also specified "There are concerns for Mother's protective capacity." Id.

On June 2, 2020, pursuant to a permanency review hearing, the [c]ourt issued Orders which indicated that Appellant had made moderate progress in compliance with the permanency plan, and that the children do well in their placement home (Perm. Rvw. Orders, June 2, 2020, p. 1).

On August 31, 2020, the Agency filed petitions to involuntarily terminate Appellant's parental rights to the three children, pursuant to 23 P.S. §§ 2511(a)(1), (2) and (5).

On September 1, 2020, pursuant to a permanency review hearing, the [c]ourt issued Orders indicating that while Appellant has made moderate compliance with the permanency plan, and meets with providers at her home, there has been no progress, as Appellant fails to follow through with the skills and recommendations, and that the children do well at their placement home (Perm. Rev. Orders, September 1, 2020, p. 1). The [c]ourt went on to say that Appellant had relocated to a larger home, an hour and a half away and without transportation, and that Appellant has not engaged in any therapy as recommended. Id. at 2.

On December 9 and 10, 2020, proceedings were held in the termination of parental rights cases of the three children; however, no decision was rendered until December 31, 2020. At the December 9, 2020, hearing, the Agency's solicitor, Megan Wells, made an offer of proof with respect to the testimony of Ms. Shanelle Ianson (a caseworker for the Agency) which included that both of the female children have serious trauma and attachment issues, that they have a close bond with the foster parents, that the foster parents are willing to provide permanency, and that the girls need said permanency. N.T. 12/9/20 Hearing at p. 9. There were no objections from any counsel. Id. at 10, 11. The legal interest attorney for the children [ ] stated that she observed the children with the foster parents and that the children are very comfortable, very loving, and that they call the foster parents mommy and daddy. Id. at 13.

The dependency records pertaining to M.S., D.I., and E.I. were incorporated into the termination actions. Id. at 17.

Dr. Denise Feger was called to testify by the Agency, as an expert in child psychology, without objection by any counsel. Id. at 21. By the time of the termination of parental rights

- 4 -

proceedings, Dr. Feger had been working with the children for at least nine months. Dr. Feger completed trauma assessments on M.S. and D.I. Id. Said assessments were admitted without objection by any counsel. Id. at 22. During testimony, Dr. Feger relayed some of the children's mental health and trauma history, including M.S. having disclosed a fear of Appellant and Appellant's paramour (believed to be a reference to Appellant's husband, [A.B.]).[3] Id. at 23. In addition to a great deal of other issues, Dr. Feger also testified that M.S. had potential trigger events when having contact with Appellant, and that M.S. had deficits regarding primary attachment with caregivers. Id. at 24. Dr. Feger made suggestions and recommendations to Appellant, regarding visits with the children, regarding working in partnership with the foster mother, and regarding consistency in Appellant's interactions with the children, as well as the importance of Appellant working to establish a significant role in the lives of the children – regardless of barriers, which suggestions and recommendations were not followed by Appellant. Id. at 36. Dr. Feger testified that Appellant does not currently play a significant role in the children's lives. Id. at 38. Dr. Feger recommended that Appellant work in partnership with the foster mother, in order to promote feelings of security and trust between her and the children. Id. at 39, 40. Dr. Feger testified that Appellant's focus, rather than being on the children, was on other things such as her job, her move, and her relationship. Id. at 40. Dr. Feger also testified that at times in her interactions with Appellant, Appellant concentrated on attempts to prove that her paramour / husband was innocent of the allegations of sexual abuse. Id. Dr. Feger opined that Appellant fails to have insight regarding the circumstances, and that Appellant is unable to appreciate how the children were harmed or influenced by this process, and that Appellant seems unaware of what is necessary in order for her to assume a primary caregiver role again. Id. at 41. "The children identify their foster mother as their primary caregiver." Id. at 42. M.S. advised Dr. Feger that she has no desire to reunify with Appellant. Id. Dr. Feger continued to address Appellant's inconsistencies with Appellant, particularly regarding contact with the children, to no avail. Id.

---

[3] To protect the minor children's identity, we have replaced Appellant's husband's name with his initials, and we have also replaced or removed other identifying proper names in the block quotation with generic labels.

When Dr. Feger was questioned as to what would be more detrimental to the children's therapeutic process, termination of Appellant's parental rights or continuing to expose them to Appellant's inconsistencies, Dr. Feger responded that the ongoing inconsistencies of Appellant were more detrimental to the children than the termination of Appellant's parental rights. Id. at 44. Dr. Feger completed her direct testimony by stating " …. As I've testified at the last hearing, I spoke then firmly on the fact that the uncertainty of the future for these children because of their ages directly impacts their ability to process into traditional behaviors or responses." Id. at 48. Upon cross–examination by Appellant's [trial counsel], Dr. Feger says that "the lack of progression has impacted the bond in a fashion that the children have shifted their safety and insecurities to their primary caregiver, who's in their present, everyday life" and that "the trauma in this particular case … is more associated with their uncertainty about the future and where their loyalties shall lie in a caregiver." Id. at 49. Dr. Feger went on to say that while Appellant loves the children, she does not appear to have an understanding of how her choices impact her relationship with the children. Id. at 51. Appellant expresses an interest in doing better, but fails to follow through, and misses scheduled sessions with Dr. Feger. Id. at 53, 54.

The Agency called Ms. Michelle Fenstermacher, a worker with CYS, as a witness. Id. at 60. Ms. Fensermacher testified that Appellant was given many suggestions with respect to interacting with the children, but Appellant balked and said it was too hard because of the age disparity of the kids. Id. at 66. Ms. Fenstermacher stated that Appellant would need repeated reminders of things, including to interact with the children, and that Appellant struggled, and sometimes became defensive. Id. When the witness mentioned to Appellant that Appellant should bring healthier food, Appellant responded by stating that she couldn't afford to. Id. Ms. Fenstermacher expressed concern about Appellant having mood swings, shifting from happy to defensive, to happy again, and then tears and then back to happy or defensive. Id. at 69. She went on to testify that Appellant initially had a few visits a week with all three children, which changed in approximately February, 2020, because Appellant struggled with all three at once, and indeed had physically struck M.S. in the face once during a supervised visit. Id. at 71, 75, 76, 79. Around July 2020, Appellant relocated [ ] about an hour or so away. Id. at 73. Ms. Fenstermacher had safety concerns as well, during visits. Id. at 85. Appellant placed E.I. on a changing table, and walked away.

Id. Appellant left E.I. alone in the bathtub and left the room. Id. at 86. Upon cross–examination by Appellant's trial attorney, Ms. Fenstermacher testified that Appellant's visits did not usually go well. Id. at 92. Appellant is inconsistent, and at times defers parenting issues to foster mother. Id. at 101. E.I. is more comfortable with the foster parents than with Appellant. Id. at 107. D.I. and M.S. call the foster parents mommy and daddy. Id. at 108, 109. D.I. appears more natural with the foster family than with Appellant. Id. at 108.

The Agency also called Ms. Debra McClean (an Agency worker) as a witness. N.T. 12/9/20 at 131. Ms. McClean testified, among other things, that some of the goals she was working on with Appellant included Appellant getting counseling, due to what the children had experienced and to ensure that Appellant could cope with the situation, as well as handle the night terrors the girls were having. Id. at 136. Appellant failed to comply with any of those suggestions, and stated to the witness that nothing would change because Appellant and Husband did nothing wrong, and that everything would revert to how it was before Agency involvement. Id. at 137.

On December 10, 2020, Appellant took the stand and admitted to many of the allegations and testimony, including that she refused to sign consents for the Agency, that she had not successfully completed the STEPS program as of trial date, that she has a history of illicit drug use, that she and her husband declined drug patches and urinalysis, that she elected not to attend the children's medical appointments, that she did not engage in the recommended counseling until two days before the termination hearing, that she was late to multiple visits with the children, that she *tries* to control the children, that she did leave E.I. alone in the tub with three or four inches of water therein and that E.I. was probably at risk, and that she gets along very well with the foster mother and has no issues with foster mother's parenting, and that at least one of the children calls Appellant by her first name and calls foster mother mommy. (N.T. 12/10/21 at 151, 152, 155, 157, 158, 160, 164)

On December 22, 2020, pursuant to a permanency review hearing, the [c]ourt issued Orders indicating that Appellant is in moderate compliance with the permanency plan, that she continues to participate in some of the programs offered, and that she continues to participate in visitation with the children (Perm. Rev. Orders, December 22, 2020, p.1). The [c]ourt goes on to state that Appellant's housing remains inadequate and unsafe for the children, and that Appellant "still struggles to engage with the

children during visits," and that the children continue to do well in the placement home. Id.

On December 31, 2020, the trial [c]ourt issued Decrees terminating Appellant's parental rights to M.S., D.I., and E.I.

Anders Brief at 10-22 (emphasis in original).

Appellant filed timely separate notices of appeal on February 1, 2021.[4] On March 25, 2021, Appellant filed her Statement of Errors Complained of on Appeal Pursuant to Pa. R.A.P. 1925. The trial court filed its Supplemental Opinion Pursuant to Pa.R.A.P. 1925(a) on April 23, 2021.

Counsel filed an **Anders** brief and application to withdraw as counsel pursuant to **Anders** and **In re V.E.** on August 23, 2021. Therein, counsel sought to withdraw from these consolidated, children's fast track termination of parental rights appeals on the basis of frivolity.[5] Appellate counsel raised the following three issues for our review in the **Anders** Brief:

    I.    WHETHER THE UNDERSIGNED COUNSEL'S PETITION TO

---

[4] The thirtieth day following the entry of the December 31, 2020, Order was January 30, 2021, which fell on a Saturday. Therefore, Appellant had until Monday, February 1, 2021, to file timely appeals. **See** 1 Pa. C.S.A. §1908.

[5] Attached to the application to withdraw was a letter advising Appellant of her rights pursuant to **Commonwealth v. Millisock**, 873 A.2d 748 (Pa. Super. 2005); however, this letter was inadequate. On September 1, 2021, this Court entered an Order directing counsel to file a letter in compliance with **Commonwealth v Muzzy**, 141 A.3d 509 (Pa.Super. 2016). Counsel filed a response on September 10, 2021, but counsel's second **Millisock** letter also was inadequate. Accordingly, this Court entered an Order on September 13, 2021, again directing counsel to file a letter in compliance with **Muzzy**. Counsel complied on September 21, 2021. The **Millisock** letter and certificates of service attached to the **Anders** brief and application to withdraw indicate Appellant was served a copy of all of the documents. To date, Appellant has not responded to the petition to withdraw as counsel.

WITHDRAW AS COUNSEL SHOULD BE GRANTED, WHERE COUNSEL HAS MADE A CONSCIENTIOUS AND THOROUGH REVIEW OF THE RECORD, INVESTIGATED THE POSSIBLE GROUNDS FOR APPEAL, FOUND NO ARGUABLE ISSUES OF MERIT, AND FINDS THE ONLY ISSUES RAISED ON APPEAL TO BE FRIVOLOUS?

II. WHETHER THE TRIAL COURT ERRED IN TERMINATING APPELLANT'S PARENTAL RIGHTS WHERE SAID COURT PERMITTED INADMISSIBLE HEARSAY TESTIMONY?

III. WHETHER THE TRIAL COURT ERRED IN FINDING CLEAR AND CONVINCING EVIDENCE EXISTED TO TERMINATEAPPELLANT'S PARENTAL RIGHTS PURSUANT TO 23 Pa C.S.A. 2511(a)(1), (2), AND (5).

***Anders*** Brief at 8.

In a letter filed in this Court on September 23, 2021, Petitioner/Appellee, the Tioga County Department of Human Services Family Division, indicated it did not intend to file a brief in response to Appellant's ***Ander's*** brief.  Appellee stated it would be relying upon and deferring to the trial court's "Findings of Fact, Discussion and Opinion" filed on December 31, 2020, along with the court's "Supplemental Opinion Pursuant to Pa.R.A.P. 125(a)" filed on April 23, 2021.

Before reaching the merits of Mother's appeal, we must address counsel's motion to withdraw. ***See In re X.J.***, 105 A.3d 1, 3 (Pa.Super. 2014) (stating "[w]hen counsel files an ***Anders*** brief, this Court may not review the merits without first addressing counsel's request to withdraw.").  In ***In re V.E.,*** 611 A.2d 1267, 1275 (Pa.Super. 1992) this Court extended the ***Anders*** principles to appeals involving the termination of parental rights. Therein, we

held that "counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights may, after a conscientious and thorough review of the record, petition this Court for leave to withdraw representation if he or she can find no issues of arguable merit on which to base the appeal." *In re V.E.,* 611 A.2d at 1275. Moreover, we have held that "any motion to withdraw representation, submitted by appointed counsel, must be accompanied by an advocate's brief, not the *amicus curiae* brief delineated in **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981). **See also In re Adoption of R.I.**, 312 A.2d 601, 602 (Pa. 1973) ("the logic behind…an individual in a criminal case being entitled to representation by counsel at any proceeding that may lead to 'the deprivation of substantial rights' …is equally applicable to a case involving an indigent parent faced with the loss of his or her child.").

It is axiomatic that to withdraw pursuant to **Anders**, counsel must: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points that the appellant deems worthy of review. **In re V.E.,** 611 A.2d at 1273. Thereafter, this Court examines the record and determines whether the appeal is wholly frivolous. **Id.**

Our Supreme Court, in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa.2009), stated that an **Anders** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
> (3) set forth counsel's conclusion that the appeal is frivolous; and
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. In addition, this Court must conduct an independent review of the record to discern if there are any non-frivolous issues that counsel may have, intentionally or mistakenly, omitted or misstated. **Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa.Super. 2018) (*en banc*).

Herein, Appellant's counsel complied with the first prong of the **Santiago** test by providing a summary of the procedural history and facts in her **Anders** brief. Counsel also has complied with the second prong of the test by referring to any evidence in the record that she believes arguably supports the appeal. Counsel set forth her conclusion that the appeal is wholly frivolous and stated her reasons for that conclusion with appropriate support. Moreover, counsel filed a separate motion to withdraw as counsel, wherein she states that she has made a conscientious examination of the record after which she has concluded the appeal is frivolous. Further, counsel attempted to identify and fully develop any issues in support of Appellant's appeal.

Additionally, counsel stated she sent a letter to Appellant in which she informed Appellant she had filed a motion to withdraw along with an ***Anders*** brief and explained her rights in light of the motion to withdraw pursuant to ***Commonwealth v. Millisock***, 873 A.2d 748 (Pa.Super. 2005). The ***Millisock*** letter and certificates of service attached to the ***Anders*** brief and application to withdraw indicate Appellant was served a copy of all the relevant documents. Thus, appellate counsel has satisfied the requirements of ***Santiago****,* and we proceed to conduct our independent review of the record. ***Yorgey***, ***supra*** at 1197. In doing so, we first address the issues presented in the ***Anders*** Brief.

The first question counsel presents is whether her petition to withdraw as counsel should be granted. As we have previously determined that counsel has satisfied the requirements of ***Santiago***, and in light of our disposition, ***infra***, no further discussion or analysis is necessary with regard to this issue.

The next claim concerns whether the trial court erred in permitting inadmissible hearsay testimony. However, upon our review of the hearing transcripts from December 9, 2020, we discern no objections made on the basis of hearsay. In addition, as the trial court states, of the three hearsay objections lodged on December 10, 2020, it actually sustained two. The only hearsay objection the trial court overruled pertained to Appellant's husband's testimony concerning his reasons for failing to cooperate with CYS. ***See*** Supplemental Opinion Pursuant to Pa.R.A.P. 1925(a), filed 4/23/21, at 2 citing

N.T., 12/10/20, at 117-118; 123-24. Notwithstanding, the trial court, as the finder of fact, found that:

> [A]s evidenced by [t]his [c]ourt[']s Findings of Fact, Discussion, and Opinion, any irrelevant or immaterial hearsay evidence admitted without objection did *not* factor in [t]his [c]ourt's reasoning toward its decision.

Supplemental Opinion Pursuant to Pa.R.A.P. 1925(a), filed 4/23/21, at 3 (emphasis in original). The record supports the trial court's analysis; therefore, we find no merit to this claim.

When considering the final issue presented in the **Anders** brief, we are guided by the following standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted, brackets in original).

Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, governs involuntary termination of parental rights. **See** 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

A two-day hearing was held on December 9th and 10th of 2020, on the alleged grounds for termination under 23 Pa.C.S.A. 2511(a)(1), (2), (5) and (8). We analyze the trial court's decision to terminate Mother's parental rights pursuant to Subsections 2511(a)(5) and (b),[6] which provide, in relevant part, as follows:

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(a)(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable

---

[6] Counsel erroneously indicates in the **Anders** brief that the trial court terminated Appellant's parental rights pursuant to Subsections (a)(1), (2) and (5); however, the court focused its analysis upon and made its findings pursuant to Subsection (a)(5) only. Nevertheless, we need only agree with the court as to any one subsection of 2511(a), in addition to subsection 2511(b), to affirm. **In re B.L.W.**, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. ...

23 Pa.C.S.A. § 2511(a)(5), (b).

The trial court determined the requirements of Subsection (a) (5) clearly had been met for the following reasons:

[T]he child[ren] [were] removed by Court Order on or about September 24, 2019. Next, [Appellee] must prove that the conditions leading to the removal of the child[ren] continues to exist. As noted above at the time of the child and siblings' removal, one (1) of the children had sustained injury caused by sexual abuse, which required medical attention. Other concerns related to housing for the children, parenting, and supervision of the children, and attention to their physical, mental and developmental needs. [Appellee] was required and did attempt to offer service to address these needs. [Appellant] was offered services through both the Effective Safe Parenting (ESP) and Supporting, Teaching, Educating Parents (STEPs) programs. [Appellant] met with service providers at intervals, but did not successfully complete either program. [Appellant] was offered visitation to allow her to maintain contact with the children, but struggled with regularly attending. [Appellant] also struggled with implementing the parenting techniques during visitation. [Appellant] acknowledges that she left the youngest child unattended in a bathtub at least one (1) time during a supervised visitation. [Appellant] was also requested to seek services to bolster her protective capacity and attended only three (3) sessions. Appropriate, safe housing was also a goal in this matter. [Appellant] with her husband, has purchased a trailer and ha[s]

been working on it since approximately July[.] [A]t this point it remains inappropriate and unsafe for the child and/or siblings to be placed there. Shortly after removal, the two (2) oldest children were determined to be in need of mental health therapy and have been receiving it. The resource family in cooperation with [Appellee], has regularly engaged with the therapist, Denise Feger. [Appellant] has, in approximately the last year, spok[en] with Ms. Feger three or four (3 or 4) times and has not otherwise participated or supported her daughters in this process, despite being advised to do so by the therapist. During the limited interactions with Ms. Feger, [Appellant] requests "updates", but demonstrates "no insights into the causes" of the children's needs. Reunification with [Appellant] would require "substantial changed by mom" [sic] and involve a transition back to her care would involve [sic] substantial time and effort according to Ms. Feger. Based upon the foregoing, [Appellee] has established by clear and convincing evidence that the conditions leading to placement continue to exist. [Appellee] must next demonstrate that the parent cannot or will not remedy the conditions or will not remedy the conditions within a reasonable time. Despite the constant efforts of [Appellee] to provide services, [Appellant] has only sporadically engaged with providers and there is no reasonably identifiable date at which [Appellant] may complete her work. [Appellant] has taken some steps to address appropriate housing, but again, no time has been established when the home she has purchased would be suitable for any one (1) or all three (3) children. Most concerning however is the complete failure of [Appellant] to support her daughters in their necessary counseling. Despite numerous requests, [Appellant] has not taken any steps or even demonstrated any intention to engage with the children's therapist. There is simply no indication [Appellant] will take the necessary steps to reunify with her children at any knowable date. In fact, [Appellant] has consistently maintained a focus on demonstrating that her husband did not sexually abuse the child rather then working to address the significant needs of the children. [Appellant] has further advised caseworkers and staff that everything would return "to the way it was before" when the children are returned. Lastly, the [c]ourt must find that the termination of parental rights would best serve the needs and welfare of the child[ren]. [Appellee] has established this as well. Specifically, the [c]ourt notes the need of th[e] young child[ren] for stability and permanency. Additionally, the child[ren] [are] entitled to support, safety, and security. [Appellee] has consistently attempted to

support mother in the goal of reunification with her children. [Appellant] has demonstrated that she will not consistently function as a patent to the child and siblings. [Appellant] has failed to make the needs of the child and siblings a priority. The [c]ourt is satisfied the [Appellee] has met its burden as to subsection (a)(5).

Findings of Fact, Discussion and Opinion, filed 12/31/20, at 2-4. [7]

The testimonial evidence described above supports the trial court's decision to terminate Appellant's parental rights. Appellant has not worked toward the goal of reunification with the children despite numerous opportunities in which to do so and has failed to address their significant needs.

Appellant admittedly declined to complete the STEPs service program or meet with her daughters' therapist. N.T. 12/10/20, at 152, 155-56, 171. She also admitted to having difficulty caring for all three children together, saying only that she was "trying to" do so. This difficulty is reflected in the fact that she explained she had believed it was safe to leave one-year-old E.I. alone in the shower with "3 or 4 inches of water in there" when she went to see where the girls were. *Id*. at 158, 160. Appellant noted that E.I. was probably in danger but she "wasn't really thinking." *Id*. at 160. Appellant also acknowledged there was a warrant out for her arrest because she had missed

_____

[7] The trial court filed the same Findings of Fact, Discussion and Opinion at each of the three dockets. For consistency, we have made some edits within block quotes herein to pluralize some of the singular designations of "child." *See also infra*.

a court hearing. *Id*. at 162. Perhaps most troubling to this Court is Appellant's and her husband's indictment for sexual abuse, for which Appellant refused to take responsibility and instead claimed that neither she nor her husband "[has] done anything wrong." *Id*. at 164.

We have explained that a parent does not perform her parental duties by displaying a "merely passive interest in the development of the child." *In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003)). "Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id*. (citation omitted). By Appellant's own admissions, she has failed in this regard.

We next determine whether termination was proper under Subsection 2511(b). Under this subsection, we consider whether termination of parental rights will best serve the child's developmental, physical, and emotional needs and welfare. 23 Pa.C.S.A. § 2511(b). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010). "[A] parent's basic constitutional right to the custody and rearing of ... her child is converted, upon the failure to fulfill ... her parental duties, to the child's right to have

proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment. *Id*. at 1120 (citation omitted).

In determining that the children's needs herein would be best met by granting the termination, the trial court observed:

The child[ren] have been in placement fifteen (15) months at this time. Since placement, the needs of the child and the two (2) siblings have been met by resource parents [  ] in cooperation with the petitioner as legal custodian. [Appellant] has not meaningfully engaged in any of the child[ren's] activities medical or other care or development. [Appellant] rarely attended medical appointments and never actively engaged with the two (2) older children's therapist despite specific requests to do so. The child and the siblings are entitled to the benefit of stability, security, and permanency. Termination of the parental rights of [Appellant] best ensure[s] those benefits.

The child[ren] while maintaining contact with [Appellant] through visitation, now look[] to the resource parents for comfort in times of distress and need. The resource parents have met not just the basic physical needs of these children, but also their development. The children identify the resource home as their own and at least the two (2) older children have specifically stated that the resource home is their home. The children have integrated into the immediate and extended family and lives of the resource parents. During the placement, a strong, positive and valuable bond has grown between the child[ren] and the resource home at the same time. [Appellant] has allowed the bond between herself and the children to weaken. She had, at times, missed visitation, has relocated to a home farther away from the children, and has not worked to maintain or strengthen the bond between her and the children. [Appellant's] failure to progress towards reunification and unwillingness to make unnecessary [sic] changes is on-going. A denial of the requested termination petition at this time deprives the children of stability and permanency and leaves them in a state of suspension, waiting for changes, which [Appellant] is unlikely to make.

The [c]ourt acknowledges that while weakened, a bond continues to exist between the child[ren] and [Appellant]. However, adequate resources are available to address an[y] disruption caused by the severance of the bond. The bond no

longer serves the interest of the child, but rather is an obstacle to long-term well-being, stability, and permanency. . . .

Findings of Fact, Discussion and Opinion, filed 12/31/20, at 4-5.

The record supports the trial court's factual findings. Thus, we find the court did not abuse its discretion in holding that the termination of Appellant's parental rights would best meet the children's developmental, physical, and emotional needs and welfare. Appellant has not been a significant presence in her children's young lives. In contrast, the children have bonded strongly with their resource parents as is evidenced in the fact that the children refer to them as mommy and daddy and rely upon them to consistently provide them with the developmental, physical, and emotional care they need daily. Therefore, the trial court's determination under Subsection (b) was not an abuse of discretion.

Finally, our independent examination of the certified records did not reveal any additional, nonfrivolous issues overlooked by counsel, *see V.E.*, *Yorgey*, *supra*, and we agree with Appellant's counsel that the within appeal is wholly frivolous. Accordingly, we grant counsel's petition to withdraw from representation and affirm the Decrees terminating Appellant's parental rights to her three, minor children pursuant to 23 Pa.C.S.A. §§ 2511(a)(5) and (b).

Petition to withdraw granted. Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2021